AO 91 (Rev. 11/11)  Criminal Complaint

FILED
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

NOV 3 0 2020

MITCHELL R. ELFERS
CLERK

# UNITED STATES DISTRICT COURT

for the

District of New Mexico

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| | ) | Case No. 20-MJ-1977 |
| Ricardo ALARCON NUNEZ | ) | |
| SSN: XXX-XX-1587 | ) | |
| DOB: XX/XX/1979 | ) | |
| | ) | |
| _Defendant(s)_ | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____November 24, 2020_____ in the county of _____Sandoval_____ in the

_____ District of _____New Mexico_____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 18 U.S.C. §912 | On or about the above date, Ricardo ALARCON NUNEZ did falsely assume or pretend to be an officer or employee acting under the authority of the United States or any department, agency or officer thereof, and acted as such. |
| Title 18 U.S.C. §701 | On or about the above date, Ricardo ALARCON NUNEZ did possesses any badge, identification card, or other insignia, of the design prescribed by the head of any department or agency of the United States for use by any officer or employee thereof, or any colorable imitation thereof. |

This criminal complaint is based on these facts:

See Attached Affidavit

☑ Continued on the attached sheet.

_____
_Complainant's signature_

Samuel Supnick, Special Agent, ATF
_____
_Printed name and title_

Electronically submitted and telephonically sworn.

Date: _____11/30/2020_____

_____
_Judge's signature_

City and state: _____Albuquerque, NM_____

The Honorable Kirtan Khalsa, USMJ
_____
_Printed name and title_

Criminal Complaint - Continued.

United States of America
                    V.
Ricardo ALARCON NUNEZ
SSN: XXX-XX-1587

1. I, Samuel Supnick, a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), being duly sworn, deposes and states:

2. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF). I have been employed with ATF since January of 2017. I am an investigative, or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510 (7), in that I am an officer of the United States who is empowered by law to conduct investigations and make arrests for the offenses enumerated in Title 18, 21, and 26, United States Code.

3. Through the ATF, I attended the Criminal Investigator Training Program at the Federal Law Enforcement Training Center, as well as the Special Agent Basic Training Program at the ATF National Academy. During these programs, I received instruction in and practiced the investigation of violations of federal firearms, explosives, and arson statutes. Prior to employment with ATF, I served for approximately three and a half years as a local police officer. My training and experience has involved, among other things: (1) the debriefing of defendants, witnesses and informants, as well as others who have knowledge of the purchase, possession, distribution, and transportation of firearms and of the laundering and concealment of proceeds of firearms and drug trafficking; (2) surveillance; (3) analysis and processing of documentary, electronic, and physical evidence; (4) the legal and illegal purchase of firearms; (5) the execution of arrest and search warrants seeking firearms and narcotics (6) and firearms trafficking.

4. The statements contained in this affidavit are based, in part, on information provided by Special Agents and/or Task Force Officers of the ATF and other law enforcement officers, and on my background and experience as a Special Agent of the ATF.

5. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## PROBABLE CAUSE

1. On November 25, 2020, your Affiant was notified of an incident in which an individual impersonated an ATF employee via a forwarded email from the Rio Rancho Police Department (RRPD). The incident occurred on November 24, 2020 at the Walmart, located at 901 Unser Boulevard SE, Rio Rancho, New Mexico. This location is in the County of Sandoval, District of New Mexico.

pay attention

**Page 3 of 14 Pages**

Criminal Complaint - Continued.

United States of America
V.
Ricardo ALARCON NUNEZ
SSN: XXX-XX-1587

2. On November 27, 2020, your Affiant traveled to the above Walmart location and spoke with Asset Protection personnel there. Your Affiant spoke with Walmart employee R.A., who advised the following (the below information is a summary and not a verbatim transcription of R.A.'s statement to Your Affiant, which was not recorded):

    (a) On November 24, 2020 at approximately 6:00 PM, two males entered the store. One male (henceforth referred to as Subject #2) continued into the store while the second (henceforth referred to as Subject #1), made contact with another store employee and then R.A. Subject #1 was wearing blue and white shoes, khakis, and a shirt with a badge. R.A. described Subject #1 as between 5'08" and 5'10" in height and weighing approximately 170 pounds. Subject #1 was acting in a nervous or odd manner and had bloodshot eyes.

    (b) Subject #1 advised R.A. that he was with ATF and had to do an inspection, as two (2) other Walmart stores had been shut down. R.A. knew that two (2) other Walmart stores had indeed been shut down per the New Mexico Public Health Order in reference to COVID-19. Subject #1 advised R.A. that he needed to inspect the produce, as some stores had been charging too much.

    (c) Subject #1 and R.A. began walking toward the produce section of the store. Subject #1 immediately covered his face with a mask (he had entered the store without one) and later began to put on a hooded sweatshirt that covered his ATF shirt. At the produce section, R.A. began to ask further questions about Subject #1 and his purpose at the store. Subject #1 produced a wallet containing a badge. The wallet had two business cards that stuck out of it. Subject #1 advised he could not give R.A. a business card, but that he had relevant paperwork in his vehicle. R.A. leaned in to look at the business cards in Subject #1's wallet, and smelled the odor of an alcoholic beverage emanating from Subject #1. Subject #1's phone was working like a walkie-talkie and appeared to be constantly emitting radio transmissions.

    (d) R.A. asked to see the paperwork relating to the inspection in Subject #1's car. Subject #1 went out to his vehicle, described as a silver Mercury Grand Marquis. Subject #1 returned with an official-looking black leather portfolio.

Page 4 of 14 Pages

Criminal Complaint - Continued.

United States of America
                V.
Ricardo ALARCON NUNEZ
SSN: XXX-XX-1587

---

      (e) Within the black portfolio were various official-looking papers. Subject #1 advised R.A. that he was actually looking for people making homemade grenades or explosives. Subject #1 showed R.A. a chart containing the photographs of several people and asked R.A. if he had seen them. R.A. asked Subject #1 for clarification. Subject #1 became agitated and left in his vehicle. R.A. contacted RRPD in reference to the incident.

3. Your Affiant reviewed Walmart surveillance of the above incident with Walmart Asset Protection Personnel. Your Affiant observed that the shirt worn by Subject #1 is consistent in appearance with the 5.11 Tactical Assault shirt issued to ATF Special Agents (henceforth assault shirt). This shirt bears an embossed gold ATF badge on its front left side. The shirt also reads "ATF POLICE" on the front and back. Subjects #1 and #2 were observed arriving and departing in the same vehicle. Your Affiant noted the vehicle appeared to be a metallic late 1990's or early 2000's model Ford Crown Victoria or Mercury Grand Marquis. Your Affiant was advised by a Walmart Asset Protection employee that the vehicle did not appear to have a license plate displayed based on the surveillance footage. While reviewing the surveillance footage, it was learned that Subject #2 had patronized the McDonalds restaurant inside of the Walmart store before departing.

4. Your Affiant contacted employees of the above McDonalds restaurant and reviewed surveillance footage from November 24, 2020. In it, Subject #2 is observed purchasing food from the restaurant and paying with cash. Your Affiant spoke with the McDonalds employee who had served Subject #2. The employee advised that nothing specific stood out about Subject #2.

5. Your Affiant was provided with a copy of the Walmart surveillance footage from the above incident. Your Affiant also obtained a copy of the surveillance footage from the McDonalds restaurant in the Walmart depicting Subject #2. Your Affiant took still photographs while reviewing both sets of surveillance footage for dissemination to law enforcement.

6. Between November 25 and November 28, 2020, your Affiant conducted investigative research via law enforcement databases to identify potential suspects. Several persons of

Criminal Complaint - Continued.

United States of America
        V.
Ricardo ALARCON NUNEZ
SSN: XXX-XX-1587

interest were identified, but most were ruled out due to their current physical appearance being inconsistent with that of Subject #1 as depicted in the Walmart surveillance footage. One person of interest was identified based on appearance and possible ownership of a vehicle consistent in appearance with the vehicle observed in the Walmart surveillance footage; however, this vehicle was not observed at the subject's residence when an ATF agent drove past it on November 28, 2020. An apparently unrelated vehicle that the subject had been previously driving during a traffic stop was observed at the residence. Ricardo ALARCON NUNEZ was not identified as a possible suspect during this investigative research or known to your Affiant until his arrest, which is detailed below.

7. On November 28, 2020, your Affiant was contacted by ATF Resident Agent in Charge (RAC) Keith Rodriguez. RAC Rodriguez notified your Affiant of the arrest of Ricardo ALARCON NUNEZ (henceforth NUNEZ) by the Rio Rancho Police Department (RRPD). RAC Rodriguez advised your Affiant that NUNEZ had been arrested in possession of personal identifying information belonging to RAC Rodriguez and ATF-related apparel. RAC Rodriguez advised Your Affiant he believed that the recovered items, to include the ATF assault shirt seen in the Walmart surveillance footage from November 24, 2020, had been taken from a recreational vehicle RAC Rodriguez had in storage. RAC Rodriguez observed possible signs of unauthorized entry on the recreational vehicle on November 21, 2020 but did not notice anything missing. Before November 21, 2020, RAC Rodriguez had last been at the vehicle sometime in September 2020.

8. Your Affiant and RAC Rodriguez responded to the RRPD facility where NUNEZ was being held, located at 500 Quantum Road NE, Rio Rancho, New Mexico. Upon their arrival, NUNEZ was asleep in a holding cell. NUNEZ was woken up and was sat down on a bench outside of the cell. Your Affiant smelled the strong odor of an alcoholic beverage coming from NUNEZ's person. RRPD personnel had NUNEZ remove some of the layers of clothing he had on, revealing that NUNEZ was wearing a t-shirt with a printed ATF badge and the words "ATF POLICE" in printed on it in yellow. This shirt is consistent in appearance with t-shirts issued to ATF agents for official use. Your Affiant observed that NUNEZ is consistent in appearance with Subject #1 from the Walmart surveillance video.

Page 6 of 14 Pages

Criminal Complaint - Continued.

United States of America
V.
Ricardo ALARCON NUNEZ
SSN: XXX-XX-1587

9.  Your Affiant and RAC Rodriguez interviewed NUNEZ. The interview was conducted in a mix of Spanish and English. Your Affiant recorded audio of the interview. The below information is a summary of the interview and not a verbatim transcription.

10. Your Affiant asked NUNEZ if he preferred to speak in English or Spanish. NUNEZ replied to the effect that he would speak what your Affiant preferred. Your Affiant asked NUNEZ his name. NUNEZ was initially incoherent and unresponsive, rubbing himself and groaning. Your Affiant asked NUNEZ his name in Spanish. NUNEZ stated his name was Ricardo ALARCON. Your Affiant introduced himself as a Federal agent and displayed his ATF credentials to NUNEZ. NUNEZ asked your Affiant to see your Affiant's picture on his credentials, which had been covered by your Affiant's finger. Your Affiant moved his finger to show NUNEZ. NUNEZ advised he was homeless and agreed when Your Affiant asked if he was living out his car. Your Affiant asked NUNEZ if he was OK. NUNEZ replied that everything hurt, and advised that he had not used drugs. NUNEZ indicated that he had been drinking alcohol.

11. Your Affiant began to advise NUNEZ of his rights per Miranda in English. NUNEZ looked down and closed his eyes. Your Affiant advised NUNEZ in Spanish that he was being disrespectful. NUNEZ advised he was being respectful, but expressed discontent that he was in police custody, rather than Federal custody. Your Affiant then advised NUNEZ of his rights per Miranda in Spanish. NUNEZ advised he understood his rights per Miranda and agreed to speak with your Affiant.

12. NUNEZ advised the ATF shirt he was wearing had been given to him. He did not remember who gave him the shirt. NUNEZ initially advised he had been given about six (6) shirts approximately four (4) days ago because he is homeless and doesn't have clothing. NUNEZ advised he did not remember who gave him the shirts.

13. NUNEZ advised he had three cars. A GMC truck which broke down in Santa Fe, a Toyota that he did not know the whereabouts of, and a grey Crown Victoria. NUNEZ sleeps in the Crown Victoria. NUNEZ was not driving but was changing the tire of that vehicle when contacted by the police. NUNEZ could not remember if all of the shirts (Your Affiant had been referring to the ATF shirts) were in that car or also the Toyota.

Criminal Complaint - Continued.

United States of America
V.
Ricardo ALARCON NUNEZ
SSN: XXX-XX-1587

14. Your Affiant asked NUNEZ to write his name. NUNEZ was initially uncooperative, and your Affiant advised him he didn't have to write his name if he didn't want to write it. NUNEZ replied he would out of respect. NUNEZ wrote 'RICARDO ALARCON NUNEZ' on a notepad provided by your Affiant. Your Affiant also asked NUNEZ to write down his date of birth. NUNEZ wrote and advised your Affiant it was April 11, 1979.

15. NUNEZ became emotional and began to talk about dealings with the cartel. NUNEZ advised he dealt drugs fifteen (15) years ago but no longer did. NUNEZ spoke of his family and referred to his phone. Your Affiant asked NUNEZ if he needed his (NUNEZ's) phone, which was next to him on the bench, and if he had a photo. Your Affiant handed NUNEZ his phone, and observed NUNEZ enter the passcode '1999' to unlock it. NUNEZ advised he had a family member in the United States military and began to show your Affiant his (NUNEZ's) Facebook. Your Affiant told NUNEZ it was OK and took his phone from him, putting it back down on the bench. NUNEZ advised he worked in construction and landscaping where he could find work. NUNEZ advised he was currently in between jobs.

16. Your Affiant again asked NUNEZ about the ATF shirts. NUNEZ advised he had gotten them a week and a half ago. NUNEZ advised the person who gave him the shirts looked similar to RAC Rodriguez, but wasn't him. NUNEZ did not pay for the shirts. NUNEZ received them at the Circle K gas station at Bridge Road and 8th Street. At this point in the interview, NUNEZ observed your Affiant's recorder, which was resting on the bench for the majority of the interview. NUNEZ became upset that your Affiant had not told him he was recording.

17. Your Affiant told NUNEZ that they needed to talk about what happened at Walmart on Monday. NUNEZ stated something to the effect that he was sorry for the shirt and took off the ATF t-shirt he was wearing. Your Affiant advised NUNEZ it was a felony to lie to a Federal agent conducting an investigation, and that your Affiant was investigating what had occurred at Walmart on Monday of that week. NUNEZ advised he did not know what had happened. Your Affiant asked NUNEZ if he had been at the Walmart on Unser on Monday or maybe Tuesday. NUNEZ replied he did not remember. Your Affiant asked about Tuesday, November 24, at 6:00 PM. NUNEZ responded he did not remember. Your Affiant showed NUNEZ a still photo from the Walmart surveillance footage. Your

Criminal Complaint - Continued.
United States of America
             V.
Ricardo ALARCON NUNEZ
SSN: XXX-XX-1587

Affiant asked NUNEZ if it was him and what had happened. NUNEZ replied to the effect that he did not know or remember.

18. Your Affiant advised NUNEZ that it was very important that they talk about what happened because decisions would need to be made about what happened with NUNEZ and his family. NUNEZ immediately replied that he did not have family and that no one cared about what happened to him. Your Affiant replied that he cared, but that he needed the truth to do something to help him. NUNEZ became emotional and spoke about no one caring about what happened to him.

19. Your Affiant told NUNEZ that your Affiant thought NUNEZ wore the shirt to bypass the line at Walmart and that NUNEZ didn't do anything bad. NUNEZ advised and emphasized he never said that he was a Federal agent. Your Affiant asked NUNEZ what he did say. NUNEZ repeated that he never said he was a Federal agent. NUNEZ advised if he were a Federal agent, he would have a badge.

20. RAC Rodriguez began speaking with NUNEZ and asked him if he recalled the day to which he and Your Affiant were referring. NUNEZ replied to the effect that he did not as he had been drinking. RAC Rodriguez told NUNEZ they knew NUNEZ had entered Walmart and not bought anything. NUNEZ was advised he was being given a chance to tell his side of the story. NUNEZ asked if he could put on a hooded sweatshirt and was advised he could. Your Affiant observed the hooded sweatshirt NUNEZ put on was consistent in color with the sweatshirt put on by the subject in the Walmart surveillance footage. NUNEZ advised he did not steal the shirts, referring to the ATF shirts.

21. NUNEZ advised he was homeless and slept in his car. Your Affiant told NUNEZ he went into Walmart on Tuesday night. NUNEZ replied he did not remember. Your Affiant advised NUNEZ that maybe his telling of events would jog NUNEZ's memory. Your Affiant began telling NUNEZ about what had happened on Tuesday night. Your Affiant told NUNEZ that NUNEZ had a badge in his wallet. NUNEZ denied having a badge and advised he did not know the whereabouts of his wallet. Your Affiant asked NUNEZ whose business cards he had in his wallet. NUNEZ replied just his lawyer and his probation officer. NUNEZ advised he was currently on probation. NUNEZ was adamant that he never claimed he was an ATF agent. NUNEZ stated he wished he were, as people were afraid of ATF. Your Affiant asked NUNEZ what he did say. NUNEZ advised he did not remember. Your Affiant asked NUNEZ if he told the people at Walmart that he

Criminal Complaint - Continued.
United States of America
                    V.
Ricardo ALARCON NUNEZ
SSN: XXX-XX-1587

was with ATF and if he asked to inspect the produce. NUNEZ replied in the negative to both questions.

22. Your Affiant asked NUNEZ if he did not want people to think he was an ATF agent, then why did he go into the store with that shirt and why did NUNEZ not remove the badge from it. NUNEZ replied to the effect that it was long sleeve shirt and it was cold out. Your Affiant asked NUNEZ why he did not wait in line like everyone else. NUNEZ asked Your Affiant if your affiant saw him go to the restroom. Your Affiant replied in the negative and asked NUNEZ if that's what NUNEZ needed to do. NUNEZ nonverbally replied in the affirmative. Your Affiant asked NUNEZ who was with him that night and showed him photos of the surveillance of Subject #2. NUNEZ replied he was called 'Lou.' NUNEZ advised he knew him from Wells Park.

23. Your Affiant asked NUNEZ to tell him the whole story of what happened. NUNEZ again advised he remembered that he did not claim he was an agent. NUNEZ advised he did not know what he (referring to 'Lou') did. NUNEZ advised he remembered going in and needing the restroom, but his memory was foggy. Your Affiant asked NUNEZ if he needed time to think about it. NUNEZ replied he did not and respected what you guys (referring to ATF) do. Your Affiant then left the room to speak with RRPD personnel. RAC Rodriguez continued questioning NUNEZ.

24. RAC Rodriguez asked NUNEZ what he was doing before he went to Walmart. NUNEZ replied he thought he was at the park, but did not remember well. RAC Rodriguez asked who he was with. NUNEZ gave the names and nicknames of some people he had been with. NUNEZ confirmed he was not on drugs and had not used them that day. RAC Rodriguez asked NUNEZ if he remembered talking to people at Walmart. NUNEZ replied in the negative.

25. RAC Rodriguez asked NUNEZ where he got the shirts from. NUNEZ replied they were given to him in new condition. RAC Rodriguez asked NUNEZ about the other items in addition to the clothes. NUNEZ replied he was given a jacket, backpack, and things. NUNEZ advised at the time he was working in landscaping at 10th Street and Mountain Road. NUNEZ advised they allowed him to park his car there so he slept there. RAC Rodriguez asked NUNEZ about the backpack. NUNEZ advised it had a heart on it, said 'I love you,' and was black and grey. RAC Rodriguez asked NUNEZ about the jacket. NUNEZ replied it was the ATF one with the badge. RAC Rodriguez asked NUNEZ if it

Criminal Complaint - Continued.
United States of America
      V.
Ricardo ALARCON NUNEZ
SSN: XXX-XX-1587

was the one he wore at Walmart, and NUNEZ replied in the negative. NUNEZ advised
he did not know where that jacket was and that the items were given to him by someone
he had never seen before in Wells Park. NUNEZ advised there was a laptop computer in
the backpack. When asked by RAC Rodriguez, NUNEZ clarified that all the items,
including the ATF clothing, came together. NUNEZ advised he paid the most attention to
the ATF clothing because it was cold.

26. RAC Rodriguez asked NUNEZ if he was cold, why did he not go into Walmart with the
hooded sweatshirt on over the ATF shirt. NUNEZ advised he was cold and he never
claimed he was an ATF agent. NUNEZ became emotional and advised he wished he
were and would give money to be. He advised he guessed he didn't have what it takes to
work for them. RAC Rodriguez asked NUNEZ if he knew the stuff was stolen property.
NUNEZ replied he didn't know, as similar items can be purchased at Goodwill. RAC
Rodriguez asked NUNEZ if he remembered any of the names written on the things.
NUNEZ replied in the negative. RAC Rodriguez emphasized that it was a big deal that
NUNEZ was in possession of those items. NUNEZ advised he did not take them. RAC
Rodriguez asked NUNEZ where the rest of the shirts were. NUNEZ replied they were in
the car, along with all the other items, as he lived in the car. NUNEZ indicated the police
present had or knew where the car was.

27. RAC Rodriguez asked NUNEZ if he had been arrested before, to include for stealing
things. NUNEZ replied he had been arrested for various things but not stealing. NUNEZ
advised the last time he was arrested was two or three weeks ago, as he had warrants
because he was homeless. NUNEZ stated something to the effect that it was better that he
stay there, possibly referring to the police station or jail. RAC Rodriguez asked NUNEZ
where he stays. NUNEZ replied he puts gasoline in his car to use the heat and stays in it.

28. Your Affiant asked NUNEZ if the shoes on the subject in the Walmart surveillance
footage were his shoes. NUNEZ replied in the negative. Your Affiant began to review the
information he had learned with NUNEZ. Your Affiant asked NUNEZ why he showed a
badge to the Walmart employee in the produce section. NUNEZ denied having a badge.
Your Affiant advised NUNEZ that the police took a badge out of his wallet. NUNEZ
again denied having a badge in his wallet. Your Affiant told NUNEZ the only thing that
would help him was being honest and asked what NUNEZ showed the Walmart
employee that the employee thought was a badge. NUNEZ asked to see the pictures that

Criminal Complaint - Continued.
United States of America
      V.
Ricardo ALARCON NUNEZ
SSN: XXX-XX-1587

your Affiant had of that. Your Affiant advised he could show NUNEZ, but he needed
NUNEZ to be honest first. NUNEZ advised he never impersonated an ATF agent.

29. Your Affiant showed NUNEZ a photo of the Walmart surveillance footage of NUNEZ
opening what appears to be a wallet in front of a Walmart employee. NUNEZ replied that
was not even him telling him (the employee) anything. Your Affiant asked NUNEZ what
happened at Walmart. NUNEZ replied he asked for the restroom and that was it. Your
Affiant again asked NUNEZ what happened at Walmart. NUNEZ asked your Affiant if
he walked out with free stuff or stole anything. NUNEZ advised he didn't claim to be an
agent and just walked in with a shirt that he was given and came out and that was it.
NUNEZ was adamant that nothing happened in the Walmart, and the he didn't know
what the other guy did. Your Affiant asked who that person was. NUNEZ advised they
were homeless and his name was 'Lou.' NUNEZ continued that he lives at Wells Park
and that he could take Your Affiant there. 'Lou' also stays at St. Martins. NUNEZ
advised he did not steal or take anything.

30. Your Affiant asked NUNEZ how he could remember specifically that he did not claim to
be an ATF agent but nothing else about the incident. NUNEZ replied he knew what he
said and knew what he didn't. Your Affiant asked NUNEZ what he said to the Walmart
employee in the produce section. NUNEZ replied he did not claim to be an agent because
if you do, you need to show credentials. NUNEZ advised that he was shown a picture of
him getting his wallet out. Your Affiant asked NUNEZ why he got his wallet out if he
was only there to use the bathroom. NUNEZ replied that when you go to buy alcohol,
you have to show your ID. Your Affiant asked NUNEZ if that is what he was doing.
NUNEZ replied in the affirmative and that there was video. Your Affiant replied to
NUNEZ that NUNEZ did not buy any alcohol and that he should stop lying. NUNEZ
replied that if someone is asked if they have money to pay for something and gestured in
a manner suggesting the display of a wallet. Your Affiant told NUNEZ he was not asked
that. Your Affiant told NUNEZ that Your Affiant had an idea of what happened, but
NUNEZ was there. Your Affiant asked NUNEZ for the fact of what happened. NUNEZ
informed your Affiant that your Affiant kept asking where things were, but that Your
Affiant should already know that everything is in his car, like the rest of the shirts.
NUNEZ again emphasized that he never claimed to be an ATF agent. NUNEZ again
advised he did not show a badge. Your Affiant asked NUNEZ if he opened up his wallet
while he was there. NUNEZ replied in the affirmative and to the effect if one is asked if
they have money to pay for something they show their wallet to show that they do. Your

Criminal Complaint - Continued.

United States of America
V.
Ricardo ALARCON NUNEZ
SSN: XXX-XX-1587

Affiant told NUNEZ he was not asked that, as your Affiant had spoken with Walmart employees. NUNEZ told your Affiant that your Affiant was believing the Walmart employees.

31. Your Affiant informed NUNEZ that he was throwing out his only opportunity to be honest. NUNEZ repeated that he didn't claim to be an ATF agent. Your Affiant asked NUNEZ what happened when he walked out to his car and returned with a portfolio. NUNEZ became quiet. Your Affiant informed NUNEZ he did not think NUNEZ was being honest. NUNEZ replied he was being honest and that your Affiant was assuming. Your Affiant terminated the interview.

32. NUNEZ was briefly placed back in the holding cell before being booked by RRPD personnel on local charges.

33. Your Affiant spoke with multiple RRPD officers in reference to NUNEZ. Your Affiant also later read the State of New Mexico criminal complaint authored by RRPD Officer (Ofc.) Roskos in reference to NUNEZ's actions on November 28, 2020. Your Affiant learned that earlier in the evening on November 28, 2020, Ofc. Roskos had responded to a call for a suicidal person cutting their wrists. While responding to the call, Ofc. Roskos observed the person later identified as NUNEZ changing the tire on a vehicle in a parking lot in the area of 184 Unser Boulevard NE.

34. RRPD officers made contact with the suicidal person, identified as M.G., in the area of 312 Unser Boulevard NE. M.G. advised that she had been getting a ride to a homeless shelter from a male subject. The male got two flat tires and began changing them in a parking lot down the street. M.G. advised the male was acting stupid and like a cop. The male then began calling her stupid and being mean to her so she went to the above address and began cutting her wrists since she was stressed. M.G. advised the male was stealing tires from other vehicles.

35. Ofc. Roskos took up a position down the road and observed NUNEZ remove the tire from one vehicle and place it on another. The vehicle NUNEZ was placing the stolen tires on was identified as a silver Ford Crown Victoria with no registration plate. NUNEZ was observed hiding behind vehicles when a police vehicle would pass by on Unser Boulevard. RRPD officers contacted NUNEZ, who advised a friend had dropped him off

Criminal Complaint - Continued.

United States of America
                    V.
Ricardo ALARCON NUNEZ
SSN: XXX-XX-1587

at the location and told him to change the tires on one or more vehicles, none of which he
owned. Ofc. Roskos observed evidence of the Crown Victoria receiving flat tires in an
obvious crash. Ofc. Roskos also observed a gold badge and patch/shirt that were visible
through the window of the car. Ofc. Roskos observed evidence that NUNEZ was under
the influence of alcohol. NUNEZ was placed under arrest for various state charges.
RRPD officers inventoried the vehicle and located a black leather portfolio containing
RAC Rodriguez's personal identifying information in it as well as what was later
identified as an ATF assault shirt.

36. An RRPD Officer advised Your Affiant that a silver metal badge had been glued in
NUNEZ's wallet and was removed by an RRPD officer. Two business cards belonging to
Homeland Security Investigations (HSI) Special Agents were also recovered in the
RRPD investigation. Custody of the badge, which is shaped like a star within a crescent
and reads 'MARSHAL – I.T. UNITED STATES,' both recovered ATF shirts (the assault
shirt seized from the dashboard and the t-shirt worn by NUNEZ), and RAC Rodriguez's
portfolio was turned over to Your Affiant and RAC Rodriguez. Your Affiant observed
that the assault shirt, with the exception of a pin now on its collar, was consistent in
appearance with the shirt worn by the subject in the Walmart surveillance footage. Your
Affiant seized NUNEZ's phone and hooded sweatshirt as evidence. Your Affiant and
RAC Rodriguez photographed various items of evidence. RAC Rodriguez was advised
that RRPD personnel had not searched the trunk of the vehicle.

37. NUNEZ's vehicle was initially left by RRPD at the scene of his arrest; however, the
vehicle was towed to an RRPD secure lot and sealed at your Affiant's request. Your
Affiant photographed the vehicle. Your Affiant observed the vehicle was consistent in
appearance with the vehicle observed in the Walmart surveillance footage.

Page 14 of 14 Pages

Criminal Complaint - Continued.

United States of America
             V.
Ricardo ALARCON NUNEZ
SSN: XXX-XX-1587

38. Based upon these facts, your Affiant opines there is probable cause to believe that
Ricardo ALARCON NUNEZ did falsely assume or pretend to be an officer or employee
acting under the authority of the United States or any department, agency or officer
thereof, and acted as such in violation of Title 18 U.S.C. §912. Your Affiant also opines
that there is probable cause to believe that Ricardo ALARCON NUNEZ possessed a
badge, identification card, or other insignia, of the design prescribed by the head of any
department or agency of the United States for use by any officer or employee thereof, or
any colorable imitation thereof in violation of Title 18 U.S.C. §701.

Respectfully submitted,

Samuel Supnick
Special Agent
ATF

Electronically submitted and telephonically sworn
on November 30, 2020:

UNITED STATES MAGISTRATE JUDGE